UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eliseo C.,

      Petitioner,

v.

Todd Blanche, *Acting Attorney General*;
Markwayne Mullin, *U.S. Department of
Homeland Security*; Department of
Homeland Security; David Venturella,[1]
*Acting Director of Immigration and
Customs Enforcement*; Immigration and
Customs Enforcement; Daren K. Margolin,
*Director for Executive Office for
Immigration Review*; Executive Office for
Immigration Review; and David
Easterwood, *Director, Fort Snelling Field
Office Immigration and Customs
Enforcement*,

      Respondents.

File No. 26-cv-2282 (ECT/SGE)

**OPINION AND ORDER**

---

Maria Miller, Martin Law, Bloomington, MN, for Petitioner Eliseo C.

Derek Ganzhorn and David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, Department of Homeland Security, David Venturella, Immigration and Customs Enforcement, Daren K. Margolin, Executive Office for Immigration Review, and David Easterwood.

---

Petitioner Eliseo C. is a Mexican citizen who has lived in the United States since May 2016 without authorization. Pet. [ECF No. 1] ¶¶ 8–9, 23. He is a Saint Paul resident.

---

[1]     Acting Director Venturella is automatically substituted for Todd M. Lyons. Fed. R. Civ. P. 25(d).

*Id.* ¶ 23.  On May 17, 2016, Eliseo was issued a Notice to Appear, charging him with being an inadmissible alien not in possession of valid immigration documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2]  ECF No. 8-3 at 3.  Eliseo was paroled the following day, on May 18, pursuant to 8 C.F.R. § 212.5.  *Id.* at 4.  On January 6, 2020, Eliseo filed an application for a U visa with the United States Citizenship and Immigration Services ("USCIS") in connection with an attack he suffered in 2019.  Pet. ¶¶ 10–12.  On November 13, 2024, USCIS issued Eliseo a Bona Fide Determination Notice, which explained in relevant part:

> Because USCIS has determined your petition is bona fide and you warrant a favorable exercise of discretion, you may be issued an employment authorization document and may be placed in deferred action. . . .
>
> . . . In order to receive employment authorization, please complete and file the Form I-765 . . . in accordance with the instructions on the Form I-765 to receive your employment authorization document.  USCIS grants employment authorization based on the bona fide determination and on favorable exercise of discretion under 8 U.S.C. 1184 (p)(6), as well as under 8 C.F.R. 274a.12(c)(14), which gives the agency the authority to provide employment authorization to noncitizens placed in deferred action.  Your period of deferred action will begin on the date your employment authorization begins.  You will receive separate correspondence regarding the adjudication of your Form I-765 once it is filed.

---

[2]    Eliseo was issued a new Notice to Appear on April 15, 2026.  ECF No. 8-4. According to Respondents, "[t]his was in error, as [Eliseo] was already issued an NTA in 2016, and his removal case has not yet been disposed of.  The second NTA changes nothing about the case."  ECF No. 7 at 2 n.1; *see* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."); *id.* § 1003.13 (stating that a "Notice to Appear" is a charging document).  Eliseo does not argue or suggest that the April 2026 Notice to Appear has any bearing on this case.

ECF No. 1-3. Eliseo claims he received work authorization and was placed in deferred action,[3] Pet. ¶¶ 2, 5, 12, but he does not say how long his grant of deferred action is scheduled to last.[4]

Eliseo has been charged with violating an order for protection in violation of Minnesota Statutes § 518B.01.14(b).[5] Register of Actions, *State v. Diaz Coria*, No. 62-CR-26-2543 (Minn. Dist. Ct.); *see* ECF No. 8-1 at 3; ECF No. 8-5 (citation). State court records reflect the date of the alleged offense was April 14, 2026, and Eliseo was released on his own recognizance on April 15. Register of Actions, *State v. Diaz Coria*, No. 62-CR-26-2543 (Minn. Dist. Ct.). On April 15, 2026, Department of Homeland Security ("DHS") Enforcement and Removal Operations issued a detainer to the Ramsey County Jail requesting that Ramsey County notify Immigration and Customs Enforcement ("ICE") prior to Eliseo's release. ECF No. 8-2 at 2–3. The following day, on April 16, Eliseo was

---

[3]     In support, the Petition references the November 13 Notice, Pet. ¶¶ 2, 12, but as is evident from the quoted portion of the Notice, the Notice itself does not actually grant Eliseo deferred action. It makes clear that Eliseo was required to submit a Form I-765 and receive work authorization prior to being placed in deferred action. ECF No. 1-3. Eliseo's Form I-213 indicates he submitted a Form I-765 prior to receiving the Bona Fide Determination Notice, and the Form I-765 was approved on April 9, 2024. ECF No. 8-1 at 2–3. According to the Form I-213, Eliseo's work authorization was set to expire on April 8, 2029. *Id.* at 3. Considering these additional matters, and in the absence of any argument from Respondents disputing Eliseo's claim that he has been placed in deferred action, it makes sense to accept Eliseo's allegation that he has been granted deferred action.

[4]     Respondents confirmed that Eliseo's grant of deferred action had not been revoked at the time of the June 15 hearing.

[5]     In his Petition, Eliseo alleges that he has no criminal convictions, no pending criminal charges, and no "disciplinary infractions." Pet. ¶¶ 5, 14. At the June 15 hearing on Eliseo's Petition, Eliseo's counsel explained she was unaware of Eliseo's pending criminal case when the Petition was filed.

detained by immigration officials. Pet. ¶ 13. At the June 15 hearing, Respondents confirmed that Eliseo is detained in Minnesota.

Eliseo challenges his detention under 28 U.S.C. § 2241. Pet. ¶ 17. In his Petition, Eliseo claims his detention and denial of a bond hearing violate the Immigration and Nationality Act ("INA"), Fifth Amendment substantive and procedural due process, the Administrative Procedure Act ("APA"), the Fifth Amendment Equal Protection clause, the Suspension Clause, and the *Accardi* doctrine. Pet. ¶¶ 72–141. For relief, Eliseo seeks an injunction preventing Respondents from transferring Eliseo outside of this District during these proceedings; a declaration that his continued detention violations the Constitution and laws of the United States; immediate release from custody, or alternatively, a bond hearing; costs and reasonable attorneys' fees; and "any other further relief this Court deems just and proper." *Id.* at 47–49. At the June 15 hearing, Eliseo waived his APA claim, substituting a claim that he is entitled to relief because he is a member of the class certified in *Immigration Center for Women & Children v. Noem* (*ICWC*), --- F.R.D. ---, No. 2:25-cv-09848, 2026 WL 1455004 (C.D. Cal. May 20, 2026).

I

Begin with a brief overview of the statutory framework. "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision

on whether the alien is to be removed from the United States." Except as provided by § 1226(c), which concerns noncitizens who are inadmissible or deportable because they committed or were sentenced for specified criminal offenses, the Attorney General "may release the alien on . . . bond of at least $1,500 . . . or . . . conditional parole." 8 U.S.C. § 1226(a)(2).

Section 1225 applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival," who is "deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A); *see Jennings*, 583 U.S. at 287–88. Importantly, § 1225(b)(2) says nothing whatsoever about bond hearings. *Jennings*, 583 U.S. at 297. In *Avila v. Bondi*, the Eighth Circuit held that § 1225(b)(2) applies not only to noncitizens detained at the border, but also to noncitizens present in the United States without authorization. 170 F.4th 1128, 1138 (8th Cir. 2026). The parties agree that, under *Avila*, Eliseo is subject to mandatory detention under § 1225(b)(2). *See* Pet. ¶¶ 48–49; ECF No. 7 at 2.

II

District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district

5

court's power includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing cases). The burden is on the petitioner to prove illegal detention by a preponderance of the evidence. *See Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases); *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. June 17, 2025).

A

Eliseo contends his detention violates the INA because his detention "is not tied to imminent removal, is not supported by any individualized finding of danger or flight risk, and persists solely as a result of a categorical legal interpretation that eliminates all meaningful custody review." Pet. ¶ 80. As Eliseo sees things, his detention "bears no reasonable relationship to the purposes of the INA." *Id.*

As I understand Eliseo's argument, it is foreclosed by the Eighth Circuit's opinion in *Avila*. There, the court held that 8 U.S.C. § 1225(b)(2)(A) provides for mandatory detention for individuals who, like Eliseo, are present in the United States without having been admitted. 170 F.4th at 1133–38. As construed in *Avila*, § 1225(b)(2)(A) does not provide for any individualized custody determination or review or a finding that custody is tied to "imminent" removal or supported by a finding of danger or flight risk. 170 F.4th at 1133–38. The provision authorizes mandatory detention of noncitizens present in the United States who have not been admitted, subject to certain exceptions that neither party contends apply here. The law does not support Eliseo's contention that the broad "purposes" of the INA should be used to override plain statutory text. *See id.* at 1133–34

6

("When interpreting a statute, we 'begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)).

B

Eliseo claims that he faces "a substantial risk of prolonged or indefinite detention under penal-like conditions without any finding that his confinement is necessary to serve the government's legitimate interests" in violation of his Fifth Amendment procedural due process rights. Pet. ¶ 90.

In *Banyee v. Garland*, the Eighth Circuit, relying on *Demore v. Kim*, 538 U.S. 510 (2003), determined that "detention during deportation proceedings is constitutionally valid." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (citation modified) (quoting *Demore*, 538 U.S. at 523). *Banyee* further clarified that individualized findings and interest balancing are not necessary; as the court explained, "*Zadvydas* and *Demore* have already done whatever balancing is necessary." *Id.* at 933. In *Demore*, the Supreme Court "opted for a bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Id.* at 933 (quoting *Demore*, 538 U.S. at 527). In *Banyee*, it did not matter that the petitioner had spent a year in custody awaiting a removal decision. *Id.* at 930, 932. Instead, "what matters is that detention pending deportation 'has a definite termination point'—deporting or releasing the alien—making it 'materially different' from the 'potentially permanent' confinement authorized by other statutes." *Id.* at 932 (citation modified) (quoting *Demore*, 538 U.S. at 528–29). The Eighth Circuit determined that for due process purposes, "[t]he *why*" is "more important than *how long*." *Id.*

7

I conclude that *Banyee* and *Demore* are controlling in cases where a petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2). In both cases, the petitioners were detained pending deportation proceedings pursuant to 8 U.S.C. § 1226(c), which mandates detention for noncitizens who have committed certain offenses. *See Jennings*, 583 U.S. at 303 ("Section 1226(c) . . . states that the Attorney General 'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." (quoting 8 U.S.C. § 1226(c)(1)). Both 8 U.S.C. § 1225(b)(2) and § 1226(c) provide for *mandatory* detention pending deportation proceedings.[6] *See Jennings*, 583 U.S. at 302–03. The only difference is that § 1226(c) is limited to noncitizens who have committed certain offenses while § 1225(b)(2) is not. *Banyee* does not indicate that its reasoning might be limited to noncitizens detained pursuant to § 1226(c). The opinion discusses the question in broad, generally applicable terms. *See Banyee*, 115 F.4th at 931 ("The rule has been clear for decades: 'detention during deportation proceedings is constitutionally valid.'" (citation modified)); *id.* ("The government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." (citation modified)); *id.* at 933 ("What is important is that, notwithstanding the delay, deportation remains a possibility."). This makes sense given that the Supreme Court has recognized that Congress has more flexibility when legislating regarding immigration matters such that "Congress may make rules as to aliens that would be unacceptable if

---

[6]    There are exceptions to mandatory detention under § 1226(c). *See* 8 U.S.C. § 1226(c)(4). There are also exceptions to mandatory detention under § 1225(b)(2). *See* 8 U.S.C. § 1225(b)(2)(B). Eliseo does not argue any of them might apply here.

8

applied to citizens." *Demore*, 538 U.S. at 522; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976); *Reno v. Flores*, 507 U.S. 292, 305–06 (1993); *Banyee*, 115 F.4th at 931 (first citing *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010); and then citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). And the Supreme Court has recognized that the power to detain noncitizens pending removal is necessary to the power to remove them from the country. *See Wong Wing*, 163 U.S. at 235 ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid. Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."); *Demore*, 538 U.S. at 523 ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."). Because mandatory detention is acceptable "for as long as deportation proceedings are still pending," *Banyee*, 115 F.4th at 933 (citation modified), Eliseo's procedural due process claim fails. *See Brayam G.G. v. Bondi*, 26-cv-1985 (DMT/EMB), slip op. at 3–4 (D. Minn. Apr. 15, 2026), ECF No. 22 (concluding that under *Demore* and *Banyee*, petitioner's due process rights were not violated when he was detained pursuant to § 1225(b)(2)(A)); *Alberto Rodriguez v. Jeffreys*, No. 8:25CV714, 2025 WL 3754411, at *16 (D. Neb. Dec. 29, 2025) (same); *Romero v. Brown*, --- F. Supp. 3d ---, No. 1:26-CV-00007, 2026 WL 1021455, at *6 (S.D. Iowa Apr. 15, 2026) ("The rationale of *Demore* and

*Banyee* applies equally to due process challenges under Sections 1225(b)(2) and 1226(c).").[7]

C

Eliseo claims his detention violates his substantive due process rights because "[d]etaining an individual who has a pending U visa application, who has received a Bona Fide Determination, who has been granted deferred action, who has no criminal history, no potential dangerousness and no flight risk—without requiring the government to justify detention or consider less restrictive alternatives—renders the confinement excessive and punitive in effect." Pet. ¶ 93.

A substantive-due-process analysis proceeds in two steps. First, a plaintiff must identify a "fundamental right[]" that is "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation modified). Second, the fundamental right must be "careful[ly] descri[bed]." *Id.* at 721 (quoting *Flores*, 507 U.S. at 302). "The Fourteenth Amendment forbids the government to infringe fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* (citation modified).

---

[7]   To be clear, I do not read the Petition to claim that Eliseo's procedural-due-process rights were violated because he had been granted deferred action. The Petition alleged only that the grant of deferred action created the potential for prolonged detention. *See* Pet. ¶ 90. Regardless, the decision to revoke deferred action is within USCIS's discretion. 8 C.F.R. § 214.14(d)(3) ("[D]eferred action or parole may be terminated at the discretion of USCIS.").

10

Eliseo has not identified a fundamental right. His argument seems to be that noncitizens possess a fundamental right to individualized custody review or the least restrictive confinement measures. But the cases discussed with respect to Eliseo's procedural due process claim undermine this contention. *See Demore*, 538 U.S. at 523 n.7 ("[P]rior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings."); *Romero*, 2026 WL 1021455, at *7 ("[R]elease into the country without lawful admission pending removal . . . is not deeply rooted in this Nation's history and tradition." (citation modified)); *see also id.* at *6 (noting many of the cases addressing the constitutionality of detaining noncitizens, including *Banyee*, "draw no explicit distinction between substantive and procedural due process"); *Albright v. Oliver*, 510 U.S. 266, 301 (1994) (Stevens, J., dissenting) (noting that "substantive and procedural due process . . . are not mutually exclusive, and their protections often overlap");

Where no fundamental right is implicated, "the [challenged] law must only be rationally related to a legitimate government interest." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). Section 1225(b)(2) passes this low bar because there is a legitimate government interest in enforcing immigration laws, and it is well-established that the authority to detain noncitizens is necessarily attendant to the power to remove them. *See Wong Wing*, 163 U.S. at 235; *Demore*, 538 U.S. at 523; *Carlson*, 342 U.S. at 538.

D

Eliseo brings a class-of-one equal-protection claim arguing he is being treated differently than similarly situated individuals who have the benefit of "individualized

11

custody review," presumably referring to the bond hearings provided under 8 U.S.C. § 1226(a). Pet. ¶ 111. "Class of one" refers to equal-protection claims brought by plaintiffs who do not allege class-based discrimination, but who claim to have "been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To state a valid class-of-one equal-protection claim, a plaintiff must allege "that []he had 'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). To allege such a claim, one must "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (citation modified). "This is a demanding standard, particularly given that the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Id.* (citation modified).

Eliseo does not meet these standards. He claims he "is similarly situated, for custody purposes, to other noncitizens in [removal] proceedings who have no criminal convictions and no record of violence or dangerous behavior." Pet. ¶ 111. This allegation overlooks Eliseo's recent Minnesota state charge for violating an order for protection. Eliseo has not identified other similarly situated individuals who also have pending state charges and who were provided with the individualized review Eliseo seeks.

E

Eliseo claims § 1225(b)(2)'s mandatory-detention scheme violates the Suspension Clause by "eliminating any effective means to challenge unlawful detention." Pet. ¶ 129.

12

CASE 0:26-cv-02282-ECT-SGE    Doc. 12    Filed 06/29/26    Page 13 of 18

He argues that the Board of Immigration Appeals decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that immigration judges do not have authority to entertain bond requests by noncitizens detained pursuant to § 1225(b)(2), means Eliseo "has no judicial or administrative forum in which to contest the legality of his ongoing confinement." Pet. ¶¶ 125, 128. In other words, this claim seems like a repackaging of his complaint that § 1225(b)(2) does not provide him with an individualized custody review hearing.

In *Bonachea v. Noem*, the court persuasively addressed this argument. No. 2:26-cv-653, 2026 WL 1096846, at *5 (M.D. Fla. Apr. 23, 2026). That court's analysis is worth repeating here:

> [Petitioner's] argument confuses a mechanism of review with a guarantee of a specific process. The historic core of the writ of habeas corpus is to test the lawfulness of executive detention. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 127 (2020). It is not a freestanding constitutional entitlement to a discretionary bond hearing. The very fact that [petitioner] is currently before this Court, utilizing a § 2241 petition to challenge the statutory and constitutional basis of his confinement, demonstrates that the writ is alive and well. The Court has entertained his petition, reviewed the Government's legal authority, and concluded that his ongoing detention is lawful under § 1225(b)(2). *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) ("The Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account."). The Suspension Clause does not guarantee that a petitioner will prevail on the merits, nor does it empower a court to override a valid statutory detention scheme simply because an administrative agency cannot offer bail. Because [petitioner] has successfully accessed the federal courts to test the legality of his detention, no suspension of the writ has occurred.

*Bonachea*, 2026 WL 1096846, at *5. For the reasons identified in *Bonachea*, Eliseo's Suspension Clause claim fails.

F

Eliseo contends that his detention violates the *Accardi* doctrine because he was arrested without a warrant in violation of 8 C.F.R. § 287.8(c)(2)(ii). Pet. ¶¶ 136, 140. Under 28 U.S.C. § 2241(c)(3), a federal court may order the release of a detained noncitizen when ICE fails to follow its own regulations. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017); *Mohammed H.*, 781 F. Supp. 3d at 895–96; *cf. United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988). Federal regulations provide that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii); *see also* 8 U.S.C. § 1357(a)(2) (authorizing an immigration officer to execute a warrantless arrest so long as "he has reason to believe" the noncitizen "is likely to escape before a warrant can be obtained for his arrest").

Respondents contend that they obtained a warrant for Eliseo's arrest, ECF No. 7 at 26, and they filed a Form I-200 Warrant for Arrest of Alien bearing Eliseo's name, ECF No. 8-2 at 6. The warrant is not entirely filled out. The "Certificate of Service" box at the bottom of the warrant is largely blank. *See* ECF No. 8-2 at 6. In the blank providing for the location where the Warrant for Arrest of Alien was served, the line reads "null." *Id.* Eliseo's name is filled out for the "Name of Alien" blank, but the "Date of Service," the

14

"Language" in which the notice was read to Eliseo, and the "Name and Signature of Officer" lines are all left blank. *Id.*    However, Eliseo's Form I-213, Record of Deportable/Inadmissible Alien, states that Eliseo "was provided with a[n] . . . I-200," ECF No. 8-1 at 2, which refers to the warrant, *see* ECF No. 8-2 at 6.  The Form I-213 bears the signature of a deportation officer at the bottom of each page.  *See* ECF No. 8-1.  Eliseo did not claim the warrant was deficient or was not served in his reply.  *See* ECF No. 9.  On this record, the better answer is to accept Respondents' documentation and statement that Eliseo was served with the arrest warrant.[8]

G

Eliseo argues he is entitled to relief because he is a member of the class certified in *ICWC*.  *See ICWC*, 2026 WL 1455004.  There, the court preliminarily certified three classes, one of which comprises

> [a]ll individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status.

---

[8]    The warrant is addressed to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations."  ECF No. 8-2 at 6.  That language explains which officers are authorized to conduct the arrest.  The language does not indicate that the arrest occurred pursuant to § 1226.  *See Gudino v. Almodovar*, No. 1:26-cv-00402-MKV, 2026 WL 251887, at *3 (S.D.N.Y. Jan. 30, 2026); *Liang v. Almodovar*, No. 1:25-cv-09322-MKV, 2025 WL 3641512, at *2 & n.6 (S.D.N.Y. Dec. 15, 2025).

15

*Id.* at *47.  Relevant to Eliseo, the court-ordered relief preliminarily stayed a 2025 ICE policy that rescinded 2011 and 2021 policies that directed ICE to "refrain from immigration enforcement against persons with pending petitions for victim-based benefits, including by releasing them from detention."  *Id.* at *6, *47.  The *ICWC* court also preliminarily stayed ICE's "De Facto Revocation Policy, under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas."[9]  *Id.* at *47.

It is difficult to understand how the court's decision to stay these ICE policies might entitle Eliseo to release or a bond hearing.  First, although in certain circumstances agencies may be bound by their internal policies, the Eighth Circuit has explained that "[p]rosecutorial discretion has been treated differently than other types of agency

---

[9]     As the *ICWC* court further explains it:

> Even though there is no written policy called "The De Facto Revocation Policy," it nevertheless arises out of the language of the 2025 [ICE policy], which states that "Current beneficiaries of victim-based immigration benefits may be subject to civil immigration enforcement, subject to applicable legal limitations, at the discretion of [ICE]."  . . . . [This] language . . . reflects a decision to subject persons with deferred action to immigration enforcement, directly contrary to caselaw holding that deferred action protects a person from immigration enforcement action.   Plaintiffs have filed extensive evidence showing that, notwithstanding the law, as of the issuance of the 2025 [ICE policy], Defendants have in fact been taking enforcement actions against persons with deferred action by detaining and removing them without formally revoking their deferred action status.

*ICWC*, 2026 WL 1455004, at *37 (citations omitted).

16

discretion," and it noted that "the special nature of prosecution is the reason that the *Accardi* doctrine has not been applied to criminal law enforcement policies and procedures." *United States v. Lee*, 274 F.3d 485, 492–93 (8th Cir. 2001); *see United States v. Halls*, 40 F.3d 275, 278 n.1 (8th Cir. 1994) (stating the U.S. Department of Justice's policy not to further prosecute someone already subject to a state prosecution was "an internal policy," and therefore it was "not enforceable against the government"). Deferred action is ordinarily understood to be an act of "prosecutorial discretion." *See, e.g.*, *Rauda-Castillo v. Lynch*, 616 F. App'x 385, 388 (10th Cir. 2015); *Patel v. Att'y Gen. of U.S.*, 523 F. App'x 121, 123–24 (3d Cir. 2013) (per curiam); *Johnson v. INS*, 962 F.2d 574, 579 (7th Cir. 1992); *Domingo M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW), slip op. at 5 n.3 (D. Minn. Aug. 1, 2025), ECF No. 24 (quoting New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53015 n.3 (Sep. 17, 2007) (codified at 8 C.F.R. § 214.14)). Indeed, the 2011 and 2021 ICE policies themselves state that they provide guidance regarding ICE's position with respect to its exercise of "prosecutorial discretion." *See* ICE Policy Statement 10076.1, Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs at 1 (Jun. 17, 2011), https://www.ice.gov/doclib/ foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf ("This memorandum sets forth agency policy regarding the exercise of prosecutorial discretion in removal cases involving the victims and witnesses of crime . . . ."); ICE Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims at 1 (Dec. 2, 2021), https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitiz enVictims.pdf ("ICE will exercise prosecutorial discretion in appropriate circumstances to

facilitate access to justice and victim-based immigration benefits by noncitizen crime victims."). Under the Eighth Circuit's rationale in *Lee*, the 2011 and 2021 policies do not provide a basis upon which ICE may legally be required to release Eliseo.

Second, if the ICE policy statements were legally enforceable, the 2021 policy provides that "ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits" "absent exceptional circumstances." ICE Directive 11005.3, *supra*, at 2. At the June 15 hearing, Respondents argued Eliseo's case involved "exceptional circumstances" based on his state criminal charge. Eliseo did not respond directly to this contention.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Petitioner Eliseo C.'s Verified Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 29, 2026                         s/ Eric C. Tostrud
                                             Eric C. Tostrud
                                             United States District Court